## UNITED STATES *v.* ONE OIL PAINTING.

*(Circuit Court, N. D. Illinois.* July 25. 1887.)

CUSTOMS DUTIES—ANTIQUITIES—ENTRY—FORFEITURE.

Where an oil painting that would have been entitled to be passed free of duty as an "antiquity," under the act of congress of March 3, 1883, (clause 669, Heyl, part 2, p. 38,) if regularly entered as free, has been brought into the United States by the owner without such entry, or payment of duty, but with full opportunity to the custom-house officials for examination and demand of duty, and with no intent on the part of the owner to defraud, and in the actual belief that it was not subject to duty, a proceeding to forfeit it will be barred by section 21 of the act of June 22, 1874, if not brought within one year from the time of its importation.

*Graham H. Harris*, Asst. Dist. Atty., for the United States.
*P. L. Shuman*, for defendant.

BLODGETT, J. This is a proceeding on the part of the United States to forfeit an oil painting, said to be by Raphael Sanzio, called "The Virgin of the Book," and alleged to be worth $50,000, as a work of one of the old masters, on the ground that it was imported into this country in fraud of the customs laws, and without payment of duty; the seizure having been made on the sixth of December, 1885. The information contains four counts, all of which charge willful and intentional fraud on the part of the importer in bringing this painting into the United States without payment of duty.

It is admitted that the painting in question was imported into the United States through the port of New York by this claimant, Henri Kieffer, from Paris, France, by the steamer Labrador, on the eighth of November, 1883; that it was packed in the trunks and boxes containing the wearing apparel and personal effects of Kieffer and his family; and the proof shows that these trunks and boxes were duly inspected by the proper customs officers at New York, and the contents passed free. The proof also shows that a large number of other pictures, vases, and articles of *vertu* were also packed in these boxes, and all passed free of duty. The proof also shows that Kieffer, the claimant and importer, had for several years before his immigration to this country, been engaged in business in Paris as a house decorator and furnisher, and also as a collector, to some extent, of *bric-a-brac* and works of art; that several months before he left Paris, a dealer in pictures left the one now in question with Kieffer, and obtained an advance of money upon it; that afterwards this same dealer obtained from Kieffer some valuable paintings from Kieffer's collection, which he was to sell at fixed prices and pay the proceeds to Kieffer; that he disposed of these paintings, but did not pay the proceeds or any part thereof to Kieffer, and on being threatened with prosecution agreed that Kieffer should hold the Raphael picture as security for the proceeds of the pictures thus disposed of, and that Kieffer's title should become absolute unless payment was made by a stipulated time. Not paying at the time fixed, Kieffer took steps in court to have his

title made absolute, and, soon after, Kieffer, by reason of financial reverses, decided to remove to the United States, where he had two brothers residing in the state of Iowa. Kieffer's testimony also tends to show that before leaving Paris he called at the office of the United States consul, and asked what goods he was entitled to bring into this country duty free, and was told that he could take the household goods, wearing apparel, and personal effects of himself and family, and that his pictures would come in the description of "personal effects." His pictures, including the one in question, were packed with the wearing apparel and bedding of himself and family, and on arrival at New York the trunks and boxes were opened, and, as Kieffer testifies, which is not contradicted, he told the inspector that they contained wearing apparel and personal effects of himself and family, including pictures, and no merchandise; that some of the pictures were seen and examined by the officers, but he is not certain that the officer actually examined the picture in question, and he did not tell him who painted it, nor its value.

I think the whole case turns upon the question of fact as to whether Kieffer was guilty of any actual fraud, or intent to defraud, in the importation of this picture. He had information from an official source that his pictures would be passed free as personal effects; and the customs officers, with ample opportunity to examine and determine whether they were dutiable, passed them free. If Kieffer understood, as he says he did, that his pictures and other works of art were entitled to pass free, he was not, as it seems to me, obliged to state the authorship or value, or at least was not guilty of fraud in not doing so. This picture was undoubtedly, upon the admitted facts as to its authorship, entitled to be passed free as an "antiquity," under the "Free List" of the act of March 3, 1883, (clause 669, Heyl, pt. 2, p. 38;) but it should have been regularly entered as such, so that the proper officers could have examined and decided whether it was entitled to come in duty free. Still, if Kieffer understood that on any ground he was entitled to have this article passed free, a mere neglect of prescribed forms should not be held conclusive of an intent to defraud. Section 21 of the act of June 22, 1874, provides that, "whenever any goods, wares, and merchandise shall have been entered and passed free of duty, and whenever any duties upon any imported goods, wares, and merchandise shall have been liquidated and paid, and such goods, wares, and merchandise shall have been delivered to the owner, importer, agent, or consignee, such entry and passage free of duty, and such settlement of duties, shall, after the expiration of one year from the time of entry, in the absence of fraud, and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties."

Here then we have a case where the article now in question was passed free, with, as I am satisfied from the proof, no actual intent to defraud, and with full opportunity for examination and demand of duty or compliance with forms at the time of the importation, and the lapse of about two years from the importation before the seizure. I am therefore of opinion that all questions as to the regularity of this importation,

and the entry and passing of this article through the custom-house, are barred by this statute; and that the issue must be found for the claimant. There will be an order, therefore, entered, dismissing the libel, and directing the return of the picture to the claimant.